# Moore v. Commonwealth.

June 23, 1944.

J. B. Campbell for appellant.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

This appeal is from a judgment of the Knox circuit court sentencing appellant to the state penitentiary for nine years on an indictment charging him with the offense of dwelling house breaking.

The appellant had been inducted into the United States Army in April, 1943, and stationed at Camp Haan, California. On September 12, 1943, he was granted a furlough which expired September 28, 1943. He did not report back to his camp on September 28, or at all, but stayed at the home of his father, Perry Moore, who lives in Knox county, Kentucky. On October 27 appellant was arrested at his father's home by Lane Bertram, a state highway patrolman, and at the time of the arrest the officer informed appellant that he was arresting him on a charge of deserting the army. The officer took appellant to London, Kentucky, and lodged

him in jail and he stayed in the London jail until November 5 when he was removed therefrom and taken to Barbourville in Knox county, and was there lodged in jail at about 11 a. m., and at about 1 p. m. the grand jury of that county returned an indictment against him, charging him with dwelling house breaking. On that day, November 5, appellant signed a statement, apparently prepared by the highway patrolman, in which he told about being stationed at the camp in California, was granted a furlough and failed to return to the army, and was arrested on October 27. He further said in that statement that while he was out he was associated with a boy by the name of Don Phelps and they got a car (a Ford automobile) from Zola Partin which they took without her permission, and also later one evening he and Phelps were passing by Zola Partin's house and no one was at home and he went into the house through a window and got a rifle and took it to Corbin and sold it; that he told Bertram, the officer, where the house was located and Bertram located the rifle and returned it to Zola Partin. Appellant further said in that statement: "I had rather go to the penitentiary than be returned to the army." Immediately after the indictment was returned against appellant he was brought into court and put on trial. He had no attorney and did not ask the court to appoint counsel for him, and he was tried without the advice and assistance of counsel or the presence of any member of his family. The Commonwealth's attorney introduced the highway patrolman, Bertram, as a witness, together with the statement signed by appellant, indicated above. This was the only evidence offered by the Commonwealth and appellant offered no evidence at all.

Counsel was employed for appellant after he was convicted and motion and grounds for a new trial were filed, supported by numerous affidavits including those of appellant and Zola Partin, whose house appellant was charged with breaking into. According to Zola Partin's affidavit she did not procure the indictment and had nothing to do with the prosecution and said that she was not interested in it. She said that appellant had been staying at her house with her and her nephew and he went in and out of the house when he wanted to. She further stated that for about three months before this occurrence they locked the front door and the key was lost and they used an open window about 24 by 30

16

inches, near the front door, which had been broken out for about three months and everybody, including the family and neighbors, used this window as a means of ingress and egress. She said there was nothing that could be broken, and all that anyone had to do was go through the open space. She said she saw no indication of any breaking of any kind and if she had not missed the rifle she would not have known that anyone had been in the house. She said she had known appellant's family for several years and had always told appellant that any time he came to her house and she was not there to go in if he wanted to. Appellant's affidavit was of a like nature with respect to the use of the open window and the permission of Zola Partin for him to enter her home any time he desired. He further stated that the arresting officer told him that if he went into the house at all it was house breaking, and that if he would confess to the charge of dwelling house breaking he would get the lowest penalty, which was two years, and that he relied upon the advice and statement of the officer and for that reason made the confession or pleaded guilty in court to dwelling house breaking because he thought that since he went into the house he was guilty of the charge and that he meant to plead guilty of going into the house. He and Zola Partin were corroborated by the affidavits of neighbors with respect to the use of the open window as a door, or a means of ingress and egress. It may be noted that in appellant's statement made to the arresting officer he merely stated that he went into the house "through a window" but he did not state whether or not the window was open or that he did any breaking. According to the affidavits of appellant, Zola Partin and several others, filed in support of the motion and grounds for a new trial, appellant was not guilty of dwelling house breaking at all. Appellant's father, Perry Moore, stated in his affidavit that the arresting officer told his son that he was arresting him for deserting the army, and after he was lodged in the London jail he went to see appellant and when he left London and went back to his home, which was about 32 miles away, he still thought they were going to return his son to California within a few days, and that he never heard of the indictment for house breaking, the trial or conviction, until after his son had been convicted and wrote him a letter telling him briefly the charges against him; he then went to Barbourville and examined

the records and for the first time learned that his son had been indicted and convicted on the charge of house breaking. He said that if he had known that his son had been indicted on that charge he would have employed counsel for him and assisted in his defense, etc. These affidavits were undenied by counter-affidavits or otherwise by the Commonwealth. Since the case must be reversed upon another ground, we will not now determine the sufficiency of the motion and grounds for a new trial.

One of the principal grounds argued for reversal is that since appellant was only 21 years of age and inexperienced in court proceedings and legal matters, it was the duty of the court to appoint counsel for him regardless of whether or not he asked the court to do so. According to the recent opinions of this court, a trial court is not under duty to assign counsel to an accused unless he requests that such be done and make necessary showing in support thereof. Hamlin v. Commonwealth, 287 Ky. 22, 152 S. W. 2d 297, and cases therein cited. However, notwithstanding the court was under no duty to appoint counsel for appellant without a request to do so, yet, since appellant was young, inexperienced in legal matters and court proceedings, and was tried in the absence of any member of his family or friends and without benefit of counsel, it was the duty of the court to protect appellant's legal rights with respect to admitting only competent evidence and statements of the Commonwealth's attorney, and to see that he had a fair trial. Even though appellant pleaded guilty the Commonwealth's attorney had the right to introduce evidence and to argue the case, which appellant was presumed to know, but the Commonwealth's attorney had no right to introduce evidence of other alleged offenses and crimes but should have confined the evidence to the issue of dwelling house breaking, the only charge contained in the indictment. The court permitted the Commonwealth's attorney to read to the jury the entire statement made by appellant, including that he had deserted the army or had failed to return to his camp, and that he took an automobile. We think in the circumstances the court should not have permitted those parts of the statement with respect to army desertion and taking the automobile to be read to the jury. Also, in arguing the case the Commonwealth's attorney said to the jury: ''I want you to know on the beginning you are

trying a deserter from the army for he tells you so. He says that he had rather go to the penitentiary than go back to the army. I say he ought to have the limit and if not the limit he should have enough time in the penitentiary that he will be serving his term in the penitentiary when the boys that are now at the front will be back home." This statement was improper and prejudicial and should not have been made.

Upon another trial of the case the court will limit the evidence to the charge in the indictment only, as we have indicated above, and permit no evidence or statement of counsel to the effect that appellant was guilty of any other offense.

For reasons stated, the judgment is reversed and remanded for proceedings consistent with this opinion.