Lloyd **JENKINS**, Jr., Appellant,

v.

**COMMONWEALTH** of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 2, 1973.

Eugene Watson, Irvine, for appellant.

Ed Hancock, Atty. Gen., Patrick B. Kimberlin, III, Asst. Atty. Gen., Frankfort, for appellee.

VANCE, Commissioner.

This appeal raises the question of whether the appellant was entitled to be furnished counsel at his trial and additional

questions relating to the waiver of the right of counsel.

Appellant was convicted of the crime of grand larceny and his punishment fixed at one year in the penitentiary. On the day of his trial he appeared in court without counsel and the following colloquy occurred between the trial judge and appellant:

"COURT: Lloyd, this case has been set down for trial today, and you have had plenty of time to get prepared in this case since you were here the first day of court which was three weeks ago asking when you would be indicted on this case, and the other day I asked you if you were able to hire an attorney, and it was learned at that time you owned a 1965 automobile, and I believe you went over there today and signed up for unemployment. You have been drawing unemployment?

"LLOYD JENKINS, JR.: That's right.

"COURT: How much unemployment do you draw a week?

"LLOYD JENKINS, JR.: Sixty dollars a week.

"COURT: And you have the money to hire an attorney. Have you hired an attorney to represent you in this case?

"LLOYD JENKINS, JR.: I started to get a lawyer, and you said you wouldn't put it off.

"COURT: You told us yesterday or the day before, it was about two or three days ago when I called your case and called you up here and asked you about hiring an attorney, and you said you didn't want an attorney. You said you wanted to represent yourself. Do you still feel that way?

"LLOYD JENKINS, JR.: I don't have an attorney.

"COURT: You have had about two or three months to hire an attorney..

"LLOYD JENKINS, JR.: I didn't know I was going to be indicted. They said to wait and see.

"COURT: You found out that you were indicted about two weeks ago if you will remember because the indictment was first made against you, and we had to send it back to the Grand Jury, and you were arrested at the time, and that was on May 8th. You were arrested on that day and made a bond, and you have had plenty of time, and I told you if you wanted to hire an attorney to hire one, and you told us about two or three days ago you weren't going to hire an attorney, that you were going to represent yourself, so the case is set for trial. Are you ready for trial?

"LLOYD JENKINS, JR.: Yes.

"COURT: You're ready for trial, and you're going to represent yourself?

"LLOYD JENKINS, JR.: I have no other choice.

"COURT: You had another choice, but you didn't take it.

"LLOYD JENKINS, JR.: Well, I'll be my own lawyer.

"COURT: You want to be your own lawyer?

"LLOYD JENKINS, JR.: Yes.

"COURT: Let the record show he wants to be his own lawyer."

The trial then proceeded with appellant acting as his own attorney.

■ Our first inquiry is directed to the question of whether appellant was entitled to have counsel furnished by the state. It is well-established that the state must furnish counsel for indigent defendants in cases which may result in imprisonment. Argersinger v. Hamlin, Leon County, Florida, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); Boyd v. Dutton, 405 U.S. 1, 92 S.Ct. 759, 30 L.Ed.2d 755 (1972); Gide-

on v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

■ The exact point on the economic scale at which a defendant becomes indigent and therefore entitled to have counsel furnished is not subject to precise measurement but must be determined in the case of each individual in the light of all pertinent circumstances. The general inquiry must be directed to discover whether the defendant is able to provide for his own defense. In making that determination the court may consider such factors as income, property owned, outstanding obligations and the number and ages of his dependents. There may be other factors which have relevancy to the issue.

■ In this case the record does not show that appellant was able to provide counsel for himself. The only assets he had, as shown by the record, were a 1965-model automobile and unemployment compensation benefits of $60.00 per week.

The appellant was indicted on May 15, 1972, and his trial took place on May 19, 1972. The record does not show how long appellant had been receiving the unemployment compensation; whether or not he had any money available for his defense at the time of his indictment or trial; whether he was married or single or whether he had any dependents.

The record does not show the value of his 1965-model automobile; whether it was encumbered by a mortgage or whether his equity therein had any value at all.

In view of this state of the record we are unable to say that appellant was not entitled to have counsel furnished.

Next we come to the question of whether appellant waived his right to counsel by informing the court that he would provide his own counsel or represent himself.

■ The right to counsel is a fundamental constitutional right. In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L. Ed.2d 101 (1972), the United States Supreme Court defined waiver as an intentional relinquishment or abandonment of a known right or privilege. Courts should indulge every reasonable presumption against waiver. Aetna Insurance Company v. Kennedy, 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177 (1937), and they should not presume acquiescence in the loss of fundamental rights. Ohio Bell Telephone Company v. Public Utilities, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937).

■ Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which shows, that an indigent accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver. Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L. Ed.2d 70 (1962). The difficulty with this case is that the record does not show that appellant was ever informed of his right to counsel or that counsel would be furnished if he was unable to provide his own. If he was unaware of these rights, he cannot be said to have intelligently and voluntarily waived them.

■ Once again we point out that it is vitally important that the record on appeal fully reflect all of the proceedings in the trial court. In this case it may be that at his arraignment the appellant was informed of his right to counsel but the record does not show this. In fact, the record does not show that there was an arraignment.

The judgment of conviction is reversed with directions for a new trial in conformity with this opinion.

PALMORE, C. J., and OSBORNE, REED, MILLIKEN, STEPHENSON and STEINFELD, JJ., sitting.

All concur.