James Arthur TINSLEY, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2005–CA–000361–MR.

Court of Appeals of Kentucky.

Feb. 24, 2006.

Donald H. Morehead, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Ian G. Sonego, Assistant Attorney General, Frankfort, KY, for appellee.

Before BARBER and McANULTY, Judges; MILLER, Senior Judge.[2]

## OPINION

MILLER, Senior Judge.

James Arthur Tinsley appeals from a "Final Judgment and Order Imposing Sentence" of the Hardin Circuit Court entered upon a jury verdict.

Tinsley contends that the trial court erred by failing to appoint counsel to represent him in the trial proceedings. Because the trial court improperly denied appointment of counsel based upon the mere fact that a property bond had been posted to secure Tinsley's release following his indictment; did not apply the factors to determine Tinsley's indigency as provided in KRS 31.120; and, because it is otherwise not determinable from the record whether Tinsley was in fact indigent, we reverse and remand.

On May 13, 2003, Tinsley was arrested upon a criminal complaint for the offense of first-degree trafficking in a controlled substance (cocaine). At his subsequent arraignment, the Hardin District Court appointed a public defender from the Department of Public Advocacy (DPA) to represent Tinsley. A plea of not guilty was entered. Noting that Tinsley had other pending drug trafficking indictments, the district court set his bond at $75,000.00 cash, or $150,000.00 secured, and assigned the case for a preliminary hearing on May 19, 2003. At the May 19, 2003, preliminary hearing, the district court reduced Tinsley's bond to $5,000.00 cash. Tinsley subsequently posted a $5,000.00 cash bond to secure his release.

On June 10, 2003, the Hardin County Grand Jury returned a two-count indictment against Tinsley charging him with first-degree trafficking in a controlled substance, second offense,[3] and possession of drug paraphernalia.[4] Both offenses were alleged to have been committed on June 12, 2002.

Tinsley appeared for arraignment in circuit court on June 24, 2003. At that time he appeared with DPA counsel. The DPA counsel, however, informed the court that Tinsley had private counsel representing him on other cases, but that the DPA would accept responsibility for representing Tinsley "at this time." Over Tinsley's objection, the circuit court reset his bond at $50,000.00 secured. By order dated July 9, 2003, Tinsley's $5,000.00 cash bond was ordered released and returned to him. On August 5, 2003, one Regina Thompson posted a $50,000.00 bail bond secured by a lien upon real estate owned by her. Tinsley was thereupon released pending trial. The matter was set for pretrial conference to be held on September 2, 2003.

At the September 2, 2003, pretrial conference, the public defender informed the circuit court that appellant was out on a $50,000.00 property bond and no longer qualified for public defender services. The trial court inquired of Tinsley whether he was out on a property bond, and he responded affirmatively. The trial court then advised Tinsley that the public defender had informed the court that he no longer qualified under state law for representation by the DPA because he had posted the bail bond, and that the Department was asking to be relieved as the appellant's counsel. The matter was continued until

---

**2.** Senior Judge John D. Miller sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute 21.580.

**3.** KRS 218A.1412.

**4.** KRS 218A.500(2).

October 22, 2003. The trial court instructed Tinsley that he needed to hire private counsel and be in court on that date. The trial court further informed Tinsley that the court was allowing the DPA to withdraw as counsel because he no longer met the guidelines to be represented by the agency.

On October 22, 2003, the trial court called Tinsley's case. The trial court questioned Tinsley concerning whether he had retained counsel. Tinsley responded that he had not. The trial court questioned Tinsley concerning what efforts he had made to obtain counsel. Tinsley responded that he had not obtained counsel because he could not afford to do so. The Commonwealth then informed the trial court that Tinsley had private counsel in other cases. The trial court informed Tinsley that it had already been determined that he did not qualify for representation by the DPA. The trial court further informed him that he had been given a reasonable amount of time to obtain counsel, that he had the right to represent himself, and that he may do so. The court further informed Tinsley that it was unwise to represent himself, but that he did not qualify for appointment of a public defender and that one could not be appointed to represent him. The case was continued for trial on May 13, 2004.

On May 13, 2004, the case was called for trial. Tinsley appeared without counsel. The court informed Tinsley that it would be necessary for him to represent himself since he had not obtained an attorney. The court inquired of appellant whether he understood that; Tinsley responded, "Not really, Your Honor." The court then once again inquired of appellant regarding whether he attempted to make arrangements to retain counsel. Tinsley responded that he had no money to do so.

The trial court informed Tinsley that his case was going to have to go to trial, that the case was two-years old, that appellant had plenty of advance notice regarding the trial date, that he was not qualified for a public defender, and that if he was not going to get an attorney, his only option was to represent himself. Tinsley responded that he did have money at one time, but that he had been required to pay child support in order to stay out of jail, and that, along with other events, resulted in a depletion of his money. Tinsley further informed the trial court that the "child support people" were going to indict him if he did not pay his child support. The court observed that the matter could not be postponed indefinitely. The court informed Tinsley that all of the witnesses were there for trial, including the "laboratory people" who had come from out of town. Tinsley responded that he needed to get an attorney in order to make motions to suppress and so forth. The court informed Tinsley that he could make motions himself and that the court was ready for jury selection to commence. The trial ensued.

As previously noted, Tinsley was convicted of first-degree possession of a controlled substance. The jury recommended a sentence of five-years imprisonment. Final judgment and sentence was subsequently entered consistent with the jury's verdict. This appeal followed.

Tinsley contends that he was in fact indigent and the trial court erred by determining that he was ineligible for appointment of counsel; by failing to appoint counsel; and by compelling him to proceed to trial without counsel.

█ It is now elementary that an indigent criminal defendant is entitled to appointment of counsel in any proceeding in which he could be sentenced to a term of imprisonment. U.S. Const., Amendment

6; Ky. Const., § 11; *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979); *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Boyd v. Dutton*, 405 U.S. 1, 92 S.Ct. 759, 30 L.Ed.2d 755 (1972); *Jenkins v. Commonwealth*, 491 S.W.2d 636, 638 (Ky.1973); *Hill v. Commonwealth*, 125 S.W.3d 221, 225 (Ky.2004). We note that this right was recognized in Kentucky well before *Gideon*. *See Hart v. Commonwealth*, 296 S.W.2d 212, 214 (Ky.1956) (It is the duty of a trial court to assign counsel to defend an accused when the accused makes such a request and a necessary showing in support thereof citing *Moore v. Commonwealth*, 298 Ky. 14, 181 S.W.2d 413 (1944) and *Hamlin v. Commonwealth*, 287 Ky. 22, 152 S.W.2d 297 (1941)).

▇▇▇ "The exact point on the economic scale at which a defendant becomes indigent and therefore entitled to have counsel furnished is not subject to precise measurement but must be determined in the case of each individual in the light of all pertinent circumstances. The general inquiry must be directed to discover whether the defendant is able to provide for his own defense. In making that determination the court may consider such factors as income, property owned, outstanding obligations and the number and ages of his dependents. There may be other factors which have relevancy to the issue." *Jenkins v. Commonwealth*, 491 S.W.2d 636, 638 (Ky.1973).

Relevant to the issue at hand are Kentucky Rules of Criminal Procedure (RCr)

3.05(2) and several statutes contained in KRS Chapter 31.[5] As a preliminary matter, we set forth these authorities. RCr 3.05(2) provides as follows:

If the crime of which the defendant is charged is punishable by confinement and the defendant is financially unable to employ counsel, the judge shall appoint counsel to represent the defendant unless he or she elects to proceed without counsel. The defendant has the burden of first establishing his or her indigency before counsel may be appointed. If the defendant demonstrates that he or she is a needy person as defined in KRS 31.120 and the court so concludes, then the appointment shall continue for all future stages of the criminal proceeding, including appeal. Such appointment may be terminated by the court in which the proceeding is pending at any time upon a showing that defendant is able to employ counsel.

KRS 31.110 provides, in relevant part, as follows:

(1) A needy person who is being detained by a law enforcement officer, on suspicion of having committed, or who is under formal charge of having committed, or is being detained under a conviction of, a serious crime ... is entitled:

(a) To be represented by an attorney to the same extent as a person having his own counsel is so entitled; and

(b) To be provided with the necessary services and facilities of representation including investigation and other preparation. The courts in which the defendant is tried shall waive all costs.

---

**5.** KRS Chapter 31 has been described as "a comprehensive network of statutes enacted by the legislature in response to the dilemma created by both state and federal constitutional guarantees of effective representation for indigent defendants. The choice was clear: the state either must see that a defendant is provided counsel or it cannot proceed with a prosecution." *Pillersdorf v. Department of Public Advocacy*, 890 S.W.2d 616, 618 (Ky. 1994). (Citations omitted.)

(2) A needy person who is entitled to be represented by an attorney under subsection (1) of this section is entitled:

(a) To be counseled and defended at all stages of the matter beginning with the earliest time when a person providing his own counsel would be entitled to be represented by an attorney and including revocation of probation or parole;

(b) To be represented in any appeal; and

(c) To be represented in any other post-conviction, or ... post-disposition proceeding that the attorney and the needy person considers appropriate. However, if the counsel appointed in such post-conviction, or ... post-disposition remedy, with the court involved, determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense, there shall be no further right to be represented by counsel under the provisions of this chapter.

(3) A needy person's right to a benefit under subsection (1) or (2) of this section is not affected by his having provided a similar benefit at his own expense, or by his having waived it, at an earlier stage.

KRS 31.120 provides, in relevant part, as follows:

(1) The determination of whether a person covered by KRS 31.110 is a needy person shall be deferred no later than his first appearance in court.... Thereafter, the court concerned shall determine, with respect to each step in the proceedings, whether he is a needy person. However, nothing herein shall prevent appointment of counsel at the earliest necessary proceeding at which the person is entitled to counsel, upon declaration by the person that he is needy under the terms of this chapter. In that event, the person involved shall be required to make reimbursement for the representation involved if he later is determined not a needy person under the terms of this chapter.

(2) In determining whether a person is a needy person and in determining the extent of his ... inability to pay, the court concerned shall consider such factors as:

(a) Income;

(b) Source of income;

(c) Property owned;

(d) Number of motor vehicles owned and in working condition;

(e) Other assets;

(f) Outstanding obligations;

(g) The number and ages of his or her dependents;

(h) The poverty level income guidelines compiled and published by the United States Department of Labor;

(i) Complexity of the case;

(j) Amount a private attorney charges for similar services;

(k) Amount of time an attorney would reasonably spend on the case; and

(l) Payment of money bail, *other than a property bond of another*, whether deposited by the person or another, to secure the person's release from confinement on the present charge of which he or she stands accused or convicted; and

(m) Any other circumstances presented to the court relevant to financial status.

*Release on bail*, or any other method of release provided in KRS Chapter 431, *shall not necessarily prevent him from being a needy person*. In each case, the person ... subject to the penalties for perjury, shall certify by affidavit of indigency which shall be compiled by the pretrial release officer, as provided un-

der KRS Chapter 431 and Supreme Court Rules or orders promulgated pursuant thereto, the material factors relating to his ability to pay in the form the Supreme Court prescribes. (Emphasis added.)

KRS 31.100(3) defines a needy person or indigent person as follows:

"Needy person" or "indigent person" means:

(a) A person eighteen (18) years of age or older or emancipated minor under the age of eighteen (18) who, at the time his need is determined, is unable to provide for the payment of an attorney and all other necessary expenses of representation;

This proceeding veered off-course at the September 2, 2003, pretrial conference when DPA counsel notified the trial court that the Department sought to withdraw from defending Tinsley for the reason that he no longer qualified for representation because he had been released upon the posting of a $50,000.00 property bond. The trial court agreed with the Department, stating that Tinsley no longer qualified for representation because he no longer met the guidelines to be represented by the agency. However, the plain language of KRS 31.120 contradicts that proposition. KRS 31.120(2)(*l*) provides that the posting of a property bond by another is not to be considered in determining if a defendant is needy, and KRS 31.120 further provides that "[r]elease on bail, or any other method of release provided in KRS Chapter 431, *shall not necessarily prevent [the defendant] from being a needy person."* (Emphasis added.)

■ Apparently under the impression that the posting of the property bond settled the issue, the trial court failed to consider the factors set forth in KRS 31.120 relevant to a determination of whether Tinsley was indigent. As a re-

sult, the record is silent concerning whether Tinsley was, at the time of trial, indigent pursuant to the factors set forth in KRS 31.120. Perforce, we are unable to conduct a meaningful review on Tinsley's claim of indigency and his entitlement to a court-appointed counsel.

■ It is clear, however, that Tinsley claimed that he had no funds to retain private counsel; that the trial court erroneously determined that he was not entitled to appointed counsel because a property bond had been posted; and the court failed to comply with the mandates of KRS 31.120 in determining indigency. As such, we are of the opinion Tinsley is entitled to a new trial.

■ Assuming, arguendo, that Tinsley was in fact not indigent and could have retained private counsel, nevertheless, reversal would still be required. If Tinsley were not indigent, then he, in effect, waived his right to counsel, thereby triggering the protections of *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In Kentucky, a trial court is under an affirmative duty to hold a *Faretta* hearing when an accused attempts to make an absolute or limited waiver of the right to counsel. *Hill v. Commonwealth*, 125 S.W.3d 221, 226 (Ky.2004). The trial court has three *Faretta* duties. *Id.* First, the trial court must conduct a hearing in which the defendant testifies as to whether the waiver is voluntary, knowing, and intelligent. *Id.* Second, the trial court must warn the defendant in the hearing of the benefits relinquished and the perils arising from the waiver of counsel. *Id.* Finally, the trial court must make a finding on the record that the waiver is voluntary, knowing, and intelligent. *Id.* The failure to comply with these requirements constitutes "structural" error to which harmless error analysis is inapplica-

ble. *Id.* at 228. The record is void of a *Faretta*-type hearing and the attendant duties.

The Commonwealth directs our attention to *Greeley v. Commonwealth*, 825 S.W.2d 617 (Ky.App.1992). In that case the defendant, an attorney, had been granted numerous continuances before trial. He had also been represented by a series of attorneys. On the second day of trial he asked for a continuance in order to have an attorney appointed for him. The court refused. A subsequent conviction was upheld with the court holding that the defendant had ample time to obtain counsel and that his failure to do so constituted a waiver. The court noted that the defendant was playing a "cat and mouse" game in order to delay trial in the matter. Moreover, the record clearly demonstrates that Greeley was not indigent having been possessed of "significant assets in this state in the form of common stock and natural gas...." Thus we do not believe that *Greeley* is dispositive.

In summary, while we are aware of the dilemma faced by trial courts upon the issues of indigency and the appointment of counsel, we offer the following observations: first, if a defendant raises the issue of indigency, a hearing must be held thereon for a determination in accordance with the requirements set forth in KRS Chapter 31, and the court must enter findings at the conclusion thereof. If the findings support indigency, counsel shall be appointed. Second, if the findings do not support indigency, and the defendant persists in not employing counsel, he shall be deemed to have waived counsel, whereupon he is entitled to the protections of *Faretta.* Should the trial court fail in the foregoing, the trial is defective.

For the foregoing reasons the matter is reversed and remanded to the Hardin Circuit Court for additional proceedings consistent with this opinion.

ALL CONCUR.