RENDERED: FEBRUARY 5, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1725-MR

ERIK M. DOLENTE                         APPELLANT

v.            APPEAL FROM CARROLL CIRCUIT COURT
HONORABLE R. LESLIE KNIGHT, JUDGE
ACTION NO. 11-CR-00099

COMMONWEALTH OF KENTUCKY          APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: DIXON, KRAMER, AND LAMBERT, JUDGES.

KRAMER, JUDGE: In Kentucky, criminal defendants have the right to counsel at probation revocation proceedings. Kentucky Revised Statutes (KRS) 533.050(2); *Miller v. Commonwealth*, 329 S.W.3d 358 (Ky. App. 2010). Criminal defendants likewise have the right to counsel appointed for them at public expense during those proceedings, provided they qualify as "needy." KRS 31.110(2)(a). Criminal

defendants also possess the right to reject representation by counsel and proceed *pro se*, so long as they are given a *Faretta*[1] hearing, acknowledging that the rejection is made knowingly, intelligently, and voluntarily. *Depp v. Commonwealth*, 278 S.W.3d 615, 617 (Ky. 2009).

These rights are at issue in this appeal. Specifically, Erik M. Dolente asserts the Carroll Circuit Court misapplied the law in determining he was not "needy" and therefore did not qualify for appointed counsel during his probation revocation proceedings. The circuit court further erred, he asserts, in determining that his subsequent failure to hire private counsel effectively amounted to a knowing, intelligent, and voluntary rejection of his right to counsel during those proceedings. Accordingly, he argues, the circuit court's October 16, 2019 order revoking his probation – which it entered after requiring him to represent himself – should be set aside. Upon review, we agree. We therefore vacate and remand.

The focus of this matter is not whether Dolente, prior to the revocation of his probation, adduced substantial evidence supporting that he was "needy" within the meaning of KRS Chapter 31. He produced little evidence of anything in that vein prior to his revocation, but the issue is *why*. In other words, the central issue presented in this appeal involves the correct procedure for determining whether a defendant qualifies as "needy" within the meaning of KRS

---

[1] *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

Chapter 31. As such, we will briefly review the applicable rules before discussing the facts of this case.

To prove the legal status of "needy," persons over eighteen years of age (such as Dolente) are required to demonstrate "at the time his or her need is determined" that they are "unable to provide for the payment of an attorney and all other necessary expenses of representation[.]" KRS 31.100(5)(a). As to how this is accomplished, KRS 31.120 provides in relevant part,

> (1) (a) The determination of whether a person covered by KRS 31.110 is a needy person shall be deferred no later than his or her first appearance in court or in a suit for payment or reimbursement under KRS 31.211, whichever occurs earlier.
>
> (b) The court of competent jurisdiction in which the case is pending shall then determine, with respect to each step in the proceedings, whether he or she is a needy person. However, nothing shall prevent appointment of counsel at the earliest necessary proceeding at which the person is entitled to counsel, upon declaration by the person that he or she is needy under the terms of this chapter. In that event, the person involved shall be required to make reimbursement for the representation if he or she later is determined not a needy person under the terms of this chapter.
>
> (c) A person who, after conviction, is sentenced while being represented by a public defender shall continue to be presumed a needy person, and the court, at the time of sentencing, shall enter an Order In Forma Pauperis for purposes of appeal without having to show further proof of continued indigency, unless the court finds good cause after a hearing to determine that the defendant should not continue to be considered an indigent person.

(2) In determining whether a person is a needy person and in determining the extent of his or her and, in the case of an unemancipated minor under KRS 31.100(5)(c), his or her custodial parents' or guardians' inability to pay, the court concerned shall consider such factors as:

(a) Income;

(b) Source of income;

(c) Property owned;

(d) Number of motor vehicles owned and in working condition;

(e) Other assets;

(f) Outstanding obligations;

(g) The number and ages of his or her dependents;

(h) The poverty level income guidelines compiled and published by the United States Department of Labor;

(i) Complexity of the case;

(j) Amount a private attorney charges for similar services;

(k) Amount of time an attorney would reasonably spend on the case; and

(l) Payment of money bail, other than a property bond of another, whether deposited by the person or another, to secure the person's release from confinement on the present charge of which he or she stands accused or convicted; and

(m) Any other circumstances presented to the court relevant to financial status.

Release on bail, or any other method of release provided in KRS Chapter 431, shall not necessarily prevent him or her from being a needy person. *In each case, the person* and, if an unemancipated minor under KRS 31.100(5)(c) and (d), his or her custodial parent or guardian, *subject to the penalties for perjury, shall certify by affidavit of indigency* which shall be compiled by the pretrial release officer, as provided under KRS Chapter 431 and Supreme Court Rules or orders promulgated pursuant thereto, *the material factors relating to his or her ability to pay in the form the Supreme Court prescribes*.

(Emphasis added.)

With respect to the "affidavit of indigency" described in the final paragraph of the foregoing, an example of what the affidavit must state "at a minimum" is provided in KRS 31.120(3). As set forth in that provision, the example reflects the defendant must disclose the following information:

- Employment status;

- Amount of weekly income;

- Amount of assistance received from welfare, food stamps, Social Security, workers' compensation, unemployment, retirement disability, or "other";

- Property, including a description of the property and its value;

- Any dependents, including their names, ages, and degree of relation; and

- Any outstanding obligations, describing to whom they are owed, and in what amount.

As emphasized, KRS 31.120(2) requires that "[i]n each case, the person" requesting appointed counsel, "subject to the penalties for perjury, shall certify by affidavit of indigency which shall be compiled by the pretrial release officer . . . the material factors relating to his or her ability to pay[.]" And, there are at least three reasons for that requirement *in each case*. First, the exercise of completing the affidavit of indigency with the assistance of court personnel (*i.e.*, "compiled by the pretrial release officer") effectively informs the defendant of *what* most of the "material factors" *are* "relating to his or her ability to pay" for purposes of supporting their claim. Indeed, what is bulleted above regarding the substance of what the affidavit must provide largely tracks the "material factors" implicated in KRS 31.120(2)(a)-(g), of which a defendant would have personal knowledge.

Second, by requiring the disclosure of monetary amounts and values relative to income and outstanding obligations, the affidavit requirement underscores that an assessment of neediness requires *specificity*. And third, a completed affidavit of indigency, presented to the court concerned with making the neediness determination, ensures – as the preamble of KRS 31.120(2) *requires* – that the court "shall consider such factors" in its decision.

We now turn to the relevant facts of this case. For purposes of KRS 31.120(1)(a), Dolente made his "first appearance" in Carroll Circuit Court on August 26, 2019,[2] following his arrest for allegedly violating his probation. Dolente, accompanied by a public defender, was called to stand at a lectern before the bench, and the following colloquy ensued:

> COURT: Good morning, sir. You're Erik Dolente?
>
> DOLENTE: Yes, ma'am.
>
> PUBLIC DEFENDER: Judge, this is a first call on probation violation.
>
> COURT: Mister Dolente, do you own any real estate?
>
> DOLENTE: Yes, ma'am.
>
> COURT: You do own real estate? Describe that for me please.
>
> DOLENTE: I own a single-wide trailer and a piece of land.
>
> COURT: How much acreage do you have?
>
> DOLENTE: About three or four acres.
>
> PROSECUTOR: Judge, I can tell the court that prior to Mister Dolente, we've had an outstanding bench warrant for his arrest as an absconder since I think 2015, and during the last three or four years I have received phone

_____

[2] Prior to August 26, 2019, Dolente appeared before the Carroll Circuit Court in July 2015, due to another probation violation for which he ultimately served a sixty-day term of imprisonment as a sanction. Over the course of that earlier matter, it was determined that Dolente *qualified* for appointed counsel consistently with KRS Chapter 31.

-7-

calls from a private firm, um, down around Nashville about him, um, who represented him on other matters. But, he had a private attorney there.

COURT: And according to this, he has had a "Bourne"[3] at one time. Do you intend to hire Mister Bourne again, or a private attorney?

DOLENTE: It depends on what the situation is, ma'am.

COURT: Well, you're here on a probation violation.

DOLENTE: Okay.

COURT: You need to hire your own attorney.

DOLENTE: Okay.

COURT: How much is your property worth?

DOLENTE: I'm not sure.

COURT: Do you owe any money on it?

DOLENTE: No.

COURT: And do you own vehicles?

DOLENTE: Yes, ma'am.

COURT: I'll continue this until September 9th.

PUBLIC DEFENDER: Judge, with regard to Mr. Dolente's case, as you can see this is a 2011 case. I want to ask the court to extend this time with regard to probation until such time as a reasonable time period until he can have a hearing on that.

---

[3] The record indicates attorney Edward Bourne of Owenton, Kentucky, last represented Dolente in 2012.

COURT:  I'll extend the probation, continue it until September 9th.  You need to hire your own counsel and you'll be back here that day, sir.  Thank you.

Following this colloquy, the circuit court entered a handwritten order on the docket page associated with Dolente's hearing, stating, "absconder," "3-4 acres Mobile Home No debt,"[4] "need to hire counsel extend probation," and "con't 9.9.19".

On September 9, 2019, Dolente appeared once again before the circuit court, without counsel.  There, he explained he had not yet been able to hire counsel because he was "working on the financing part of it."  In response, the circuit court extended his probation and granted him a continuance until October 7, 2019, adding, "That's it.  We're going to have a hearing on that day whether you're represented by counsel or not."

On the morning of October 7, 2019, Dolente once again appeared before the circuit court without counsel.  He and the circuit court then had the following discussion:

COURT:  Mister Dolente, have you hired counsel, sir?

DOLENTE:  No, I have not been able to.

COURT:  Alright.  So, we're here on a revocation hearing, and this is the third or fourth time we've been

---

[4] Dolente did not indicate he had "no debt."  As indicated above, he only stated during the August 26, 2019 colloquy that he did not owe money with respect to his property.

here.  So, you want to have a hearing, or you want to admit?

DOLENTE:  I'm not sure what you're asking.

COURT:  Well, your options are to have a hearing, or you can admit to the violations.

DOLENTE:  I guess I'll have a hearing, I guess.  I don't know.

The circuit court scheduled a revocation hearing for Dolente to be held later that afternoon.  Shortly before that hearing, however, the prosecutor informed the court that Dolente had made another request for court-appointed counsel; to which the circuit court responded, "We've been through this so many times."  Shortly thereafter, when Dolente was brought to the courtroom for his hearing, the court told him:

> Alright, Mister Dolente.  The Commonwealth advises me that she had spoken with you and you still think that I should provide you with counsel.  You do not meet the requirements, sir, for free counsel, so I'm not appointing a public defender.  We're here for a hearing.

A revocation hearing followed, lasting approximately fifteen minutes. Dolente called no witnesses and asked no substantive questions.  On October 16, 2019, the circuit court entered its final order revoking Dolente's probation.

On October 31, 2019, Dolente then moved to proceed on appeal *in forma pauperis*, explaining in his motion:

Mr. Dolente similarly requested court appointed counsel in his recent probation violation, but the Court denied that request due to Mr. Dolente's statements regarding property he owns. Mr. Dolente misunderstood the meaning of "real property" and denies that he owns any land. Mr. Dolente's current financial situation is accurately reflected in the Attached Financial Statement, Affidavit of Indigency, and Request for Counsel. See Exhibit 1.

Mr. Dolente believes that his current financial situation qualifies him for court-appointed counsel and respectfully requests this Court to allow him to proceed *in forma pauperis* in this action. Should this Court need additional information in order to clarify the discrepancies between Mr. Dolente's statements to the Court and the attached written representations regarding his current financial situation and assets, Mr. Dolente requests a hearing before this Court.

As he represented, Dolente included with his motion a "Financial Statement, Affidavit of Indigency, and Request for Counsel," or "AOC-350" – a form that delineates the material averments required by KRS 31.120(3), and which is promulgated by the Administrative Office of Courts (AOC) to facilitate compliance with KRS Chapter 31. In his completed AOC-350, Dolente set forth the following salient averments: (1) he had been unemployed and had received no income since August 15, 2019; (2) the only property he owned consisted of a single-wide trailer worth $7,500, and a truck worth $1,200; and (3) his total monthly expenses – which included child support for his three children – was approximately $1,050.

-11-

On November 13, 2019 – approximately one month after complaining it had already denied Dolente's requests for an appointment of a public defender "so many times" – the circuit court *granted* Dolente's motion to proceed *in forma pauperis*, without the necessity of a hearing. This appeal followed.

As an aside, there is no dispute the circuit court understood during its August 26, 2019 colloquy, set forth above, that Dolente had sufficiently made a "declaration," for purposes of KRS 31.120(1)(b), that he was "needy" and required appointed counsel. There is no dispute that, in recognizing his declaration, the circuit court made a "determination," for purposes of KRS Chapter 31, that Dolente was ineligible for appointed counsel. And, there is no dispute that Dolente did not complete – and that the circuit court never considered in conjunction with any of its pre-revocation determinations – an "affidavit of indigency" from Dolente as described in the final paragraph of KRS 31.120(2).

Rather, the circuit court's August 26, 2019 determination that Dolente was not legally "needy," which it reiterated on October 7, 2019, was based entirely upon: (1) the fact that Dolente had previously hired private counsel; and (2) Dolente's vague, informal, and unsworn statements that he owned a single-wide trailer, three or four acres, and "vehicles" of undetermined value.

To be clear, the previous hiring of private counsel is not a factor, material or otherwise, in determining whether a defendant is "needy" within the meaning of KRS Chapter 31.  *See* KRS 31.110(3).

As for Dolente's statements regarding his trailer, acreage, and "vehicles," the Commonwealth points out that the preamble of KRS 31.120(2) (*i.e.*, "the court concerned shall consider such factors as") did not require the circuit court to make findings of fact regarding *every* factor specified in KRS 31.120(2)(a)-(m) in reaching its ultimate conclusion regarding whether Dolente was "needy."  The Commonwealth notes that pursuant to KRS 31.120(2)(c) and (d), real property and vehicle ownership are among the "material factors" relevant to determining whether a defendant is "needy."  Further, the Commonwealth points out that the circuit court "considered" these factors during its August 26, 2019 colloquy with Dolente.

To be sure, the Commonwealth is correct that the phrase, "the court concerned shall consider such factors as," is not a mandate for "the court concerned" with making a neediness determination to make explicit findings regarding every factor specified in KRS 31.120(2)(a)-(m).  But, that phrase is not a license for the circuit court to ignore any of those factors, either.  Here, the circuit court did not consider whether Dolente had an income.  It did not consider his outstanding obligations.  Indeed, it *only* considered information relevant to the

-13-

factors of KRS 31.120(2)(c) and (d), and only to a limited extent: Following its colloquy with Dolente, the circuit court did not have information regarding the *value* of Dolente's property.

After recognizing Dolente had effectively requested appointment of counsel, it was incumbent upon the circuit court to verify the specifics of Dolente's neediness by requiring him to complete an affidavit of indigence. Indeed, the circuit court's "about-face" regarding Dolente's neediness – as reflected in the November 13, 2019 order it entered after Dolente submitted his affidavit of indigency – underscores precisely why an informal colloquy is not an adequate or legally tenable substitute.

Considering the foregoing, Commonwealth's remaining argument on appeal, which is that Dolente effectively "waived" his right to counsel during the revocation proceedings by failing to hire *private* counsel, is at best premature. In any event, however, it lacks merit. As stated in *Tinsley v. Commonwealth*, 185 S.W.3d 668, 675 (Ky. App. 2006), even "if the findings do not support indigency, and the defendant persists in not employing counsel, he shall be deemed to have waived counsel, whereupon he is entitled to the protections of *Faretta*." Specifically,

> [i]n Kentucky, a trial court is under an affirmative duty to hold a *Faretta* hearing when an accused attempts to make an absolute or limited waiver of the right to counsel. *Hill v. Commonwealth*, 125 S.W.3d 221, 226 (Ky. 2004).

> The trial court has three *Faretta* duties. *Id*. First, the
> trial court must conduct a hearing in which the defendant
> testifies as to whether the waiver is voluntary, knowing,
> and intelligent. *Id*. Second, the trial court must warn the
> defendant in the hearing of the benefits relinquished and
> the perils arising from the waiver of counsel. *Id*. Finally,
> the trial court must make a finding on the record that the
> waiver is voluntary, knowing, and intelligent. *Id*. The
> failure to comply with these requirements constitutes
> "structural" error to which harmless error analysis is
> inapplicable. *Id*. at 228.

*Tinsley*, 185 S.W.3d at 674-75.

Here, the record is void of a *Faretta*-type hearing and the attendant duties. Thus, no waiver occurred.[5]

In short, we are unable to meaningfully review whether Dolente was "needy" and thus entitled to appointed counsel to protect his due process rights during his revocation proceedings; but, we can determine that as a matter of law that Dolente did not knowingly waive his right to counsel. We therefore VACATE the order of the Carroll Circuit Court revoking Dolente's probation and REMAND

---

[5] As it did in *Tinsley*, the Commonwealth invokes the case of *Greeley v. Commonwealth*, 825 S.W.2d 617 (Ky. App. 1992), for the proposition that a defendant may nevertheless waive the right to counsel through conduct. Given the disparities between *Greeley* and the case at bar, we do not find that case dispositive. In *Greeley*, the defendant, an attorney, had been granted numerous continuances before trial. He had also been represented by a series of attorneys. On the second day of trial he asked for a continuance to have an attorney appointed for him. The court refused. A subsequent conviction was upheld with the court holding that the defendant had ample time to obtain counsel and that his failure to do so constituted a waiver. The court noted that the defendant was playing a "cat and mouse" game to delay trial in the matter. Moreover, the record clearly demonstrated that Greeley was not indigent, having been possessed of "significant assets in this state in the form of common stock and natural gas[.]" *Id*. at 620.

for a proper determination of whether he was entitled to appointed counsel; a new

revocation hearing; and any further proceedings not inconsistent with this Opinion.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Emily Holt Rhorer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

James C. Shackelford
Assistant Attorney General
Frankfort, Kentucky