In re the PATERNITY OF C.H.W.

Jeffrey H. Smith, Appellant–
Respondent,

v.

Lisa Huntington Weedman,
Appellee–Petitioner.

No. 49A02–0801–JV–13.

Court of Appeals of Indiana.

Aug. 14, 2008.

Transfer Denied Nov. 6, 2008.

Janice Mandla Mattingly, Carmel, IN, Attorney for Appellant.

Deborah M. Agard, Law Office of Deborah M. Agard, Indianapolis, IN, Attorney for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Respondent, Jeffrey Smith (Smith), appeals the trial court's Findings of Fact and Conclusions of Law, ordering Smith to pay the extraordinary educational expenses for the private school education of his minor child.

We affirm.

### ISSUE

Smith raises one issue on appeal, which we restate as follows: Whether the trial court abused its discretion by apportioning part of the minor child's extraordinary educational expenses to Smith.

### FACTS AND PROCEDURAL HISTORY

C.H.W. was born on June 23, 2001, to Lisa Weedman (Mother) and Smith. Mother and Smith were never married and separated before C.H.W. was born. Paternity was established by Agreed Entry on June 19, 2002. In the Entry, the parties stipulated that Mother would have sole legal custody of C.H.W. and Smith agreed to forego his parenting time. For purposes of child support, the Entry imputed Smith's income at $30,000.00 per year and established his child support at $139.00 per week. The Entry determined that in the event either party's income changes by more than ten percent, the party experiencing the change in income should notify the other party immediately in writing. In addition, Smith would be responsible for a portion of C.H.W.'s uninsured health care expenses.

Between 2001 and 2007, Smith made no effort to contact C.H.W. In 2004, when C.H.W. was three years old, Mother started to investigate several different preschools with different teaching styles. She was pleased with the complete language immersion program offered at the International School of Indiana's (ISI) preschool program. The cost for ISI's preschool program was comparable to Mother's work-related daycare expenses. In the fall of 2004, C.H.W. was admitted in the ISI's Spanish speaking program. Currently, C.H.W.'s tuition is $940.00 per month. In the past, Mother had been granted financial aid of approximately $245.00 per month.

On March 1, 2005, Mother filed a Verified Petition for Contempt against Smith, alleging that he was substantially in arrearage with his child support payments and had failed to reimburse Mother for part of C.H.W.'s uninsured medical bills. On August 15, 2005, Smith filed separate Petitions to Modify Child Support and to Modify Parenting Time. In his Petitions, Smith requested parenting time in order to establish a relationship with C.H.W. and asserted that the present child support

order was unreasonable as there had been a substantial and continuing change in circumstances. On September 7, 2005, Mother filed a Verified Amended Motion for Contempt, alleging that Smith had failed to provide notice about the change in his income of more than ten percent. Thereafter, on September 12, 2005, after a hearing, the trial court ordered the parties to attend an evaluation for visitation with Dr. Richard Lawlor, J.D., Ph.D. (Dr. Lawlor).

Early January of 2007, Smith and C.H.W. started meeting. Shortly thereafter, C.H.W. began exhibiting signs of anxiety and was wetting the bed. On January 24, 2007, following an evaluation by Dr. Lawlor, the trial court granted Smith parenting time for two hours once each month until March at Mother's house and then bi-weekly thereafter. C.H.W. was enrolled in counseling to assist with the transition towards knowing his father. Smith refused to participate in these sessions despite requests from the counselor.

Following a trial on June 28, 2007, the trial court issued its detailed Order consisting of 99 Findings of Fact and Conclusions of Law, which reads in part:

18. On November 20, 2006, Mother commenced employment with Exact Target, where she is currently employed, earning an annual salary of $72,956.00.

19. Throughout this litigation, [Smith] has been employed by various organizations in information technology positions, including TAC Worldwide, Firestone Building Products, Versatile Mortgage, SARCOM, Pinnacle Partners, Global Consultants, Inc., Quick Solutions, Robert Half, Anu Resources, Staffing Leadership Group, Proactive Business Solutions, and ComSys; his present employer is Jurlnnov, Limited.

20. At the time the parties signed the Agreed Entry of June 19, 2008, the parties imputed income to [Smith] in the amount of $30,000 a year because [Smith] had previously represented in discovery responses that he was unemployed.

21. Further discovery later conducted by Mother revealed that at the time [Smith] signed the Agreed Entry, he actually was employed at Firestone and was being paid at a rate of $52,000 a year.

22. [Smith] did not disclose this income to Mother until June 2005 during his deposition testimony.

. . .

24. During the relevant time period, 2002 to present, [Smith's] annual income for any calendar year has not exceeded $33,000.00.

25. [Smith] failed to make three (3) child support payments during calendar year 2003 even though [Smith] was employed during the times he failed to make these child support payments.

26. [Smith] also failed to make several child support payments during calendar year 2004. Many of these missed payments were during the months of October and November 2004 when [Smith] was employed and earning a monthly wage of three thousand forty dollars ($3,040.00).

27. [Smith] also failed to make several child support payments during calendar year 2005. Many of these missed payments were during the months of October 2005, November 2005 and December 2005 when [Smith] was employed.

28. [Smith] also failed to pay his child support in a consistent manner during calendar years 2006 and 2007, as he would fail to make a payment for several weeks and then make larger payments

for several weeks in an effort to make up for his missed payments.

29. During some of the time periods that [Smith] failed to pay child support, [Smith] did pay other expenses, including his cable television bill, his cellular phone bill, costs for downloading music from internet, expenses for his wedding and expenses for his honeymoon.

. . .

36. [Smith] is presently employed with an annual salary of $54,000 or $1,038.43 a week.

37. In addition to her annual salary of $72,956.00, Mother has the potential to earn bonus income and has received one bonus payment of $5,000.00. this bonus income is not guaranteed and is dependent upon her employer's overall financial success each quarter.

. . .

40. [C.W.] has been enrolled at the International School of Indiana, a private education institution, for the past three (3) years. At the time Mother enrolled [C.W.] at the International School, she desired for [C.W.] to experience a more challenging environment than that offered at a traditional daycare facility. [Smith] was not involved in [C.W.'s] life at the time Mother made the decision to enroll [C.W.] at the International School.

41. [C.W.] is now in the first grade and is doing well at the International School. Mother believes it is important and in [C.W.'s] best interests to continue in the language immersion program at the International School.

42. [Smith] believes it is "overkill" for [C.W.] to be enrolled at the International School and believes that he would be much better off in a standard school environment.

43. [Smith] has made no effort to research the public school options available to [C.W.] and does not know if a language immersion program is available at a public school.

. . .

62. [Smith] has exercised all of his parenting time with [C.W.] as provided in this [c]ourt's preliminary order.

63. [Smith] recently moved to Cleveland, Ohio. It is a six hour drive one way from [Smith's] home to Mother's home.

64. [Smith] is married to Kelly Smith and at the time of the hearing in this matter, Kelly Smith was expecting to deliver a baby in July 2007.

. . .

67. [Smith] was often uncooperative during his deposition testimony, refusing to answer certain questions or claiming that he did not remember the answer to the questions.

68. The evidence demonstrates that [Smith] was less than forthcoming in discovery on several occasions regarding his income information.

69. [Smith] also failed to produce documents requested in discovery in a timely manner and failed to update his discovery responses in a timely manner.

. . .

81. [Smith] is in contempt of this [c]ourt's prior orders as on several occasions he has willfully failed to pay his child support obligation when able to do so.

82. [Smith] is in contempt of this [c]ourt's prior orders as he willfully failed to pay uninsured medical expenses for [C.W.] when able to do so.

83. [Smith] is also in contempt of this [c]ourt's prior orders as he willfully

failed to notify Mother when he had a change of more than ten percent in his income.

. . .

85. There has been a substantial and continuing change of circumstances that makes the current child support order unreasonable in that both parties have changed jobs and [C.W.] is now enrolled in private education at the International School of Indiana.

86. Beginning Friday, September 21, 2007, [Smith] shall pay the sum of $147.00 a week for the care and support of [C.W.] pursuant to the Child Support Worksheet attached hereto.

87. Beginning Friday, September 21, 2007, [Smith] also shall pay $20.00 a week toward his child support arrearage of $1,883.00.

. . .

90. All agreed upon extracurricular expenses for [C.W.] shall be shared by the parties, with Mother paying 53% of said expenses and Father paying 47% of said expenses.

. . .

93. It is in [C.W.'s] best interests that he continue with his private education at the International School of Indiana. Beginning with tuition costs for the 2007 fall semester, Mother shall pay 53% of the tuition costs and [Smith] shall pay 47% of the tuition costs [1] . . .

94. It is in [C.W.'s] best interests that Mother continue to have sole legal and physical custody of [C.W.]. It is also in [C.W.'s] best interest that he have increased parenting time with [Smith] . . .

(Appellant's App. pp. 22–32).

On October 12, 2007, Smith filed a motion to reconsider. On November 26, 2007, the trial court, properly re-characterizing Smith's motion as a Motion to Correct Error, stated in its Order, in pertinent part:

The [c]ourt denies [Smith's] request to reconsider or correct its Order on the payment of private education expenses for [C.H.W.] to attend the International School. Not only did the [c]ourt consider [C.H.W.'s] best interest in requiring [Smith] to pay a portion of these expenses, but the [c]ourt also considered the factors in Guideline 6 of the Indiana Child Support Guidelines. This family was never intact, as [Smith] voluntarily chose to have no contact with [C.H.W.] or participate in [C.H.W.'s] life for several years, so this factor was not considered by the [c]ourt. However, the [c]ourt considered [C.H.W.'s] aptitude and ability to remain at the International School as there was significant evidence presented that [C.H.W.] was doing well in his classes at the International School. The [c]ourt also considered whether there were similar educational opportunities available to [C.H.W.] for a lesser cost, but [Smith] presented absolutely no evidence to the [c]ourt on this issue. Finally, the [c]ourt considered both parties' financial ability to pay for [C.H.W.'s] private schooling and determined that both parties had the ability to do so.

(Appellant's App. pp. 16–17).

Smith now appeals. Additional facts will be provided as necessary.

---

1. Because of a calculation error, the trial court revisited these percentages in its Order denying Smith's Motion to Correct Error. In this Order, the trial court required Mother to pay 59% and Father 41% of C.H.W.'s tuition costs.

## DISCUSSION AND DECISION

On appeal, Smith challenges the trial court's Findings of Fact and Conclusions of Law. Although the trial court in its Order modified the parties' Agreed Entry on several different points, Smith only contests the requirement to pay 47% of C.H.W.'s extraordinary educational expenses for his elementary private school expenses.

### I. *Standard of Review*

A court may order a parent to pay part or all of a child's extraordinary educational costs when appropriate. *Snow v. Rincker*, 823 N.E.2d 1234, 1237 (Ind.Ct. App.2005), *trans. denied.* Decisions to order the payment of these extraordinary educational expenses are reviewed under an abuse of discretion standard, while apportionment of expenses is reviewed under a clearly erroneous standard. *Id.* Additionally, the trial court has discretion to determine what is included in educational expenses. *Id.* at 1239–40.

At the outset, we note that the trial court entered specific findings pursuant to Indiana Trial Rule 52(A). Thus, while deciding whether the trial court abused its discretion, we must also determine whether the trial court's judgment is supported by the conclusions and whether those conclusions are supported by the findings. *In re Paternity of A.M.C.*, 768 N.E.2d 990, 1000 (Ind.Ct.App.2002). We may affirm the trial court's judgment on any theory supported by the findings. *Id.* at 1001. Nevertheless, because a judgment entered with findings pursuant to a Trial Rule 52 request is not a general judgment, we may not affirm the judgment merely because it is supported by evidence in the record. *Id.* Rather, we must determine whether the findings outlined by the trial court are sufficient to support the judgment. *Id.* We will not set aside the findings of the trial court unless they are clearly erroneous. *Id.* at 997. Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences to support them. *Id.*

It is certainly true that appellate courts give considerable deference to the findings of the trial court in family law matters. *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940–41 (Ind.2005). Whether the standard of review is phrased as abuse of discretion or clear error, this deference is a reflection, first and foremost, that the trial court is in the best position to judge the facts, to get a feel for the family dynamics, to get a sense of the parents and their relationship with their children— the kind of qualities that appellate courts would be in a difficult position to assess. *Id.* Secondly, appeals that change the results below are especially disruptive in the family law setting. *Id.* We recognize of course that trial courts must exercise judgment, particularly as to credibility of witnesses, and we defer to that judgment because the trial court views the evidence firsthand and we review a cold documentary record. *Id.* Thus, to the extent credibility or inferences are to be drawn, we give the trial court's conclusions substantial weight. *Id.* But to the extent a ruling is based on an error of law or is not supported by the evidence, it is reversible, and the trial court has no discretion to reach the wrong result. *Id.*

### II. *Extraordinary Educational Expenses*

Indiana Code section 31–16–6–2 provides that a child support order may include amounts for the child's education in elementary and secondary schools and at postsecondary educational institutions, taking into account: (A) the child's aptitude and ability; (B) the child's reasonable ability to contribute to educational expenses ... and (C) the ability of each

parent to meet these expenses. The Ind. Child Support Guideline 3(E)(4) (referring to Ind. Child Support Guideline 6 for treatment of the issue) further reinforces these statutory factors by suggesting that

> Extraordinary educational expenses may be for elementary, secondary or post-secondary education, and should be limited to reasonable and necessary expenses for attending private or special schools, institutions of higher learning, and trade, business or technical schools to meet the particular educational needs of the child.
>
> a. Elementary and Secondary Education. If the expenses are related to elementary or secondary education, the court may want to consider whether the expense is the result of a personal preference of one parent or whether both parents concur; if the parties would have incurred the expense while the family was intact; and whether or not education of the same or higher education is available at less cost.

(Ind. Child Support Guideline 6, cmt).

Here, Smith generally asserts that instead of evaluating the statutory factors prior to ordering the extraordinary educational expenses, the trial court solely considered C.W.'s best interests. In that light, he specifically contends that the trial court failed to take into account (1) his financial ability, (2) Smith's preference for C.H.W.'s education, and (3) C.H.W.'s aptitude and ability for ISI's language immersion program. We disagree. In its 99 Findings of Fact and Conclusions of Law, the trial court provided its ultimate order of extraordinary educational expenses with firm footing.

With regard to Smith's financial ability and perceived hardship, the trial court heard evidence about the respective incomes of both parties. Considering this testimony, the trial court entered specific findings elaborating on Mother's and Smith's employment history and current salary. The trial court heard evidence regarding Smith's bank records and indicated that Smith had failed to pay child support when he was able to do so and while he was paying other obligations instead of his child support. Additionally, the trial court noted Smith's continuing resistance to revealing his income by refusing to respond to Mother's discovery requests. None of these findings are now challenged by Smith. Based on these findings, the trial court reached the conclusion that the parties could afford to pay for private school fees.

■ We agree with Smith that C.H.W.'s admission and subsequent enrollment at ISI was a unilateral decision taken by Mother; however, as aptly phrased by the trial court in its denial of Smith's motion to correct error, this family was never intact. The record establishes that Mother and Smith separated before C.H.W.'s birth on June 23, 2001. Over the years, Smith never attempted to establish contact with his son. In fact, he even stipulated in the Agreed Entry following the paternity action that he "shall not have parenting time" with C.H.W. (Appellant's App. p. 76). Only after Mother filed her Petition for Contempt on March 1, 2005 did Smith subsequently request parenting time by filing a Petition to Modify Parenting Time. C.H.W. was admitted at ISI's three-year old program in the fall of 2004. Accordingly, as Smith was not present, let alone involved, in C.H.W.'s life, Mother had no other choice but to unilaterally make the decision to apply for admission at ISI. Smith cannot now be heard to complain when he voluntarily choose to be absent for many important stages in his

child's life.[2]

Nevertheless, Mother's decision was not made on a whim. At trial, Mother testified that she had investigated several different preschools with different teaching styles. She stated that she was pleased with the language immersion program presented by the school in light of her belief that it "is very important for today's society to know a second language." (Transcript p. 122). Even though Smith now indicates a preference to send C.H.W. to the local public school, he did not know which public school C.H.W. would attend, what its test scores are, or if a similar language immersion program is available.

Turning to C.H.W.'s aptitude and ability, Smith relies on *Moss v. Frazer*, 614 N.E.2d 969, 971 (Ind.Ct.App.1993), in support of his argument that C.H.W. is too young to assess his aptitude for a complete language immersion program. In *Moss*, we found that the statute then in effect, I.C. § 31–1–11.5–12(b)(1), contemplated that the trial court would conduct a comprehensive analysis of factors, such as the child's aptitude and ability, prior to rendering a decision directing payment of private school expenses. *Id.* We further held that, when a child is three years old at the date of dissolution,[3] the court cannot yet consider such factors in determining whether a private high school education would be appropriate. *Id.* However, we also stated that when the child has grown and the trial court is able to consider the child's aptitude and ability, it could modify its order to require the non-custodial parent to pay a portion of private school tuition. *Id.* at 972.

However, unlike the minor child in *Moss*, we are not starting from a blank slate. In fact, at the time of trial, C.H.W. had been enrolled at ISI for three years and his ability to continue at the school had been tested. His Mother testified that he was "thriving" at the school. (Tr. p. 123). Father did not present any evidence to the contrary. Although he now refers in his brief that C.H.W. had "trouble playing Battleship and other childhood games," the record indicates that the games Father attempted to engage C.H.W. in were not age-appropriate and more suited for older children.

In sum, the trial court properly considered the statutory requirements in its Order prior to determining that it was in C.H.W.'s best interest to continue with his private education at the ISI. Mindful of our deferential standard of review, we find that the evidence support the trial court's findings which, in turn, support its conclusions. The trial court heard evidence of C.H.W.'s suitability of his attendance of a private school, and Smith's ability to financially contribute to his child's education. While Smith may disagree with the trial court's conclusions, his arguments that private school was inappropriate for C.H.W. are essentially requests that we substitute our judgment for that of the trial court. In light of our deferential standard of review, we refuse to acquiesce to Smith's position. We find that the trial court did not abuse its discretion when it ordered Smith to pay

**2.** In support of his argument that Mother cannot unilaterally decide on private schooling for C.H.W., Smith relies on *Chavez v. Mason*, 870 N.E.2d 1095 (Ind.Ct.App.2007). We encourage Smith to review Ind. Appellate Rule 65(D). *Chavez* is an unpublished memorandum opinion, and as such has no precedential value.

**3.** Although we are rarely requested to review the award of extraordinary educational expenses in paternity actions, we have established case law on this issue with regard to dissolution of marriage. As such, we will take our guidance from dissolution cases.

41% of C.H.W.'s extraordinary educational expenses for his elementary private school.

### CONCLUSION

Based on the foregoing, we hold that the trial court properly ordered Smith to pay the extraordinary educational expenses for the private school education of his minor child.

Affirmed.

ROBB, J., concurring with separate opinion.

BAKER, C.J., dissenting with separate opinion.

ROBB, Judge, concurring.

I concur fully in the majority opinion. I write separately only to emphasize that although the trial court may not have specifically stated in its findings of fact and conclusions of law that it considered Father's ability to pay toward C.H.W.'s extraordinary educational expenses, the trial court had Father's current income and income history before it and knew the parties' circumstances and the circumstances surrounding this case, and in ordering Father to pay 47% of the educational expense, clearly determined that Father was able to do so. Moreover, I note that pursuant to 15 U.S.C. section 1673, up to 50% of Father's weekly disposable income could be garnished to enforce a support order. 15 U.S.C. § 1673(b)(2)(A). Although we are not here dealing with a garnishment order, this section would support the inference that Father's total obligation, which approaches that 50% mark but does not exceed it, is not per se an unreasonable amount.

BAKER, Chief Judge, dissenting.

I respectfully dissent from the result reached by the majority herein. Although I agree with much of the majority's analysis, I part company with the majority as to whether the trial court found that Father was able to pay 47% of the ISI tuition costs. In its order, the trial court found that at the time of the order's entry, Father's annual salary was $54,000. Appellant's App. p. 24. The trial court then ordered Father to pay 47% of the ISI tuition costs. *Id.* at 31. The trial court did *not*, however, make any findings as to Father's ability to pay that amount in addition to his weekly child support obligation of $138.24.

The majority relies on Father's past failure to pay child support and obstreperous behavior during discovery in concluding that the trial court found him able to pay the costs of tuition. Op. p. 172. I cannot see how this past behavior in any way supports a conclusion that the trial court considered Father's ability to pay the tuition and found that he is, in fact, able to do so. There is neither any indication whatsoever that the trial court made this required inquiry nor findings supporting the order that Father pay for a portion of the ISI tuition costs. Therefore, I would reverse this portion of the trial court's order.