2021 UT App 41

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
VON DEL MASON JR.,
Appellant.

Opinion
No. 20190618-CA
Filed April 8, 2021

Fifth District Court, Cedar City Department
The Honorable Matthew L. Bell
No. 190500085

Emily Adams, Freyja Johnson, and Cherise Bacalski,
Attorneys for Appellant

Brent M. Johnson, Attorney for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and RYAN M. HARRIS
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1    Von Del Mason Jr. appeals the district court's order finding him in contempt. We affirm.

## BACKGROUND

¶2    Mason and his ex-wife, who were embroiled in contentious post-divorce proceedings, attended a hearing regarding the ex-wife's relocation to Arizona. Before the judge ruled, he told the parties, "I don't want any talking to each other. I'm not open for any debate. . . . I'll give you my ruling and we can all leave, whatever your opinion is about it." After the judge

made his ruling, which was adverse to Mason, he announced, "[W]e are adjourned." Immediately thereafter Mason proclaimed to the judge, "You are a disingenuous, intellectual liar." Following that statement, the court recording was turned off for approximately one minute. However, in a written order entered that same day, the judge recited that during that break "[s]everal times the court suggested that Mr. Mason should stop talking" and later "instructed Mr. Mason to stop talking, but he continued with similar accusations and disrespectful comments." When the recording was turned back on, the following exchange took place:

> Mr. Mason: That's the truth, sir. And I have every right to tell you that.
>
> The Court: Mr. Mason, you are in contempt.
>
> Mr. Mason: Go figure.
>
> The Court: I don't appreciate—
>
> Mr. Mason: I don't appreciate you. You're not— you're dishonest.
>
> . . . .
>
> The Court: —you're trying to make this personal.
>
> Mr. Mason: No, you've made it personal, sir. You said this was your courtroom. This is not your courtroom, sir. You have a job. You were an antitrust lawyer.
>
> The Court: I told you repeatedly to stop talking. You're not listening. You are in contempt. I'm tired of it.

. . . .

Mr. Mason: You're a disingenuous liar, sir.

The Court: You are in contempt.

Mr. Mason: Okay. Enjoy it.

¶3     Based on Mason's behavior in its presence, the judge found Mason "guilty of contempt pursuant to Utah Code 78B-6-301(1) and (5)" for disrupting its proceedings and disobeying its order to stop talking and sentenced him to forty-eight hours in jail. The next day, however, the court "suspend[ed] the balance of the jail time" and ordered Mason released from jail. Mason now appeals his contempt conviction.

ISSUES AND STANDARDS OF REVIEW

¶4     As a threshold issue, we must determine whether Mason's appeal is moot in light of the fact that he has already completed his sentence. If "the requested relief cannot affect the rights of the litigants, the matter is moot and we will not consider it." *Gardiner v. York*, 2010 UT App 108, ¶ 30, 233 P.3d 500 (quotation simplified). And we consider the issue of mootness as a question of law. *See State v. Legg*, 2018 UT 12, ¶ 12, 417 P.3d 592 (explaining that mootness is reviewed "de novo").

¶5     Mason raises several substantive challenges to the district court's contempt order. First, he asserts that the court denied his right to counsel. Next, Mason asserts that he could not be held in contempt for statements he made after the court had adjourned and that the court exceeded its discretion in holding him in contempt because the court did not impose a clear order. Mason did not preserve these issues for our review, but he asks that we nevertheless review them for plain error and exceptional circumstances.

¶6 Normally, "[w]hen a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and an appellate court will not typically reach that issue absent a valid exception to preservation." *State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443. Plain error and exceptional circumstances are such exceptions. However, here the State raised the issue of mootness and briefed Mason's challenges to the court's contempt order on their merits. And as discussed below, we agree with the State that the issues Mason raises fail on their merits. Where this is the case, we possess the discretion to reject claims on their merits, even when those claims have not been properly preserved. *See State v. Kitches*, 2021 UT App 24, ¶¶ 27–28. We elect to exercise that discretion here, and after first determining that Mason's appeal is not moot, we address, and reject, Mason's claims on their merits.

ANALYSIS

I. Mason's Appeal Is Not Moot

¶7 "A challenge to a conviction of criminal contempt is not moot if there is a possibility that collateral legal consequences may result from the conviction." *Gardiner v. York*, 2010 UT App 108, ¶ 33, 233 P.3d 500. The State maintains that there is no possibility of collateral legal consequences, asserting that a criminal contempt conviction will not appear in Mason's criminal record and is not the type of criminal conviction that can be used for impeachment purposes. However, even assuming, without deciding, that the State's assertions are correct, the State does not respond to Mason's argument that "because this criminal contempt conviction comes in the midst of a family law case where child custody is involved, a record of criminal contempt may affect future decisions on custody." *Cf. State v. C.H.*, 2008 UT App 404U, para. 2 (explaining that a criminal contempt conviction may have "ramifications on future investigations or adjudications by the Division of Child and

Family Services" and could therefore affect a person's right to parent their children). "The burden of persuading the court that an issue is moot lies with the party asserting mootness," *State v. Legg*, 2016 UT App 168, ¶ 9, 380 P.3d 360 (quotation simplified), *aff'd*, 2018 UT 12, 417 P.3d 592, and we cannot say with certainty that Mason's contempt conviction could have no possible impact on future child custody determinations or in future encounters with the legal system. Thus, we agree with Mason that this appeal is not moot.[1]

## II. Mason Was Not Entitled to the Appointment of Counsel in a Direct Contempt Summary Proceeding

¶8    Mason argues that the district court improperly denied his right to be represented by counsel during the proceeding in which it found him in contempt and imposed a sanction. Mason argues that he was entitled to the assistance of counsel in these criminal contempt proceedings and that the court's failure to advise him of that right or to facilitate the appointment of

---

1. We also acknowledge but need not reach Mason's argument that even if this matter could somehow be considered moot, an exception to the mootness doctrine would apply here because Mason's appeal from the court's contempt order and sanction is an issue that is capable of repetition yet evading review. *See State v. Steed*, 2015 UT 76, ¶ 9, 357 P.3d 547 ("Issues that are likely to evade judicial review are those that are inherently short in duration such that a court will likely be unable to hear the issue when it still presents a live controversy."); *see also In re adoption of L.O.*, 2012 UT 23, ¶ 10, 282 P.3d 977 ("The types of issues likely to evade review are those that are inherently short in duration so that by the time the issue is appealed, a court is no longer in a position to provide a remedy." (quotation simplified)). The State offered no rebuttal to Mason's argument that this exception would apply here, even if the matter is technically moot.

counsel violated his constitutional rights and prevented him from adequately challenging the merits of the contempt finding. Although a defendant in most criminal proceedings—including many criminal contempt proceedings—generally has the right to counsel, *see Turner v. Rogers*, 564 U.S. 431, 441 (2011); *United States v. Dixon*, 509 U.S. 688, 696 (1993), the Supreme Court previously held, in *Cooke v. United States*, 267 U.S. 517 (1925), that such a right does not exist in *summary* criminal contempt proceedings involving conduct committed in the presence of the judge, *see id.* at 534 ("There is no need of evidence or assistance of counsel before punishment, because the court has seen the offense. Such summary vindication of the court's dignity and authority is necessary.").

¶9    Mason asserts that subsequent Supreme Court case law acknowledging that "[c]riminal contempt is a crime in the ordinary sense" and that "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings," *International Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826 (1994) (quotation simplified); *see also Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972) ("[A]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial."), should be interpreted as repudiating the Court's previous position that the appointment of counsel is not required in summary criminal contempt proceedings. However, the Supreme Court has continued to reaffirm the exception for summary criminal contempt. *See Turner*, 564 U.S. at 441 (citing *Cooke* with approval and stating that "an indigent defendant [has] the right to state-appointed counsel in . . . *criminal contempt* proceedings (other than summary proceedings)" (quotation simplified)); *Dixon*, 509 U.S. at 696 (explaining that "constitutional protections for criminal defendants," including the right to the assistance of counsel, "apply in *nonsummary* criminal contempt prosecutions

just as they do in other criminal prosecutions" (emphasis added)). Although these more recent holdings may not address the issue head-on, the Court's continued reference to the exception without repudiating *Cooke* leaves us with no basis, under the federal constitution, for recognizing a constitutional right to the assistance of counsel in summary criminal contempt proceedings. Because Mason had no right to counsel, the court could not have erred by not informing him of such a right or by choosing not to appoint counsel to assist him in the summary proceeding.

### III. We Reject Mason's Challenges to the Court's Contempt Finding

¶10    The court found Mason in contempt based on both subsections (1) and (5) of Utah Code section 78B-6-301. Mason raises challenges with respect to the court's findings under both provisions.

A.    The Court Did Not Err by Holding Mason in Contempt After Stating That Proceedings Were Adjourned

¶11    In his challenge to the contempt order, Mason asserts on appeal that the court erred in holding him in contempt under Utah Code section 78B-6-301(1), because his comments occurred after the judge had stated that proceedings were adjourned. That subsection defines contempt as "disorderly, contemptuous, or insolent behavior toward the judge *while holding the court, tending to interrupt the course of a trial or other judicial proceeding*." Utah Code Ann. § 78B-6-301(1) (LexisNexis 2018) (emphasis added). Mason asserts that the plain language of subsection (1) limits the definition of contemptuous behavior to "behavior that occurs *during* a formal court proceeding, not *after* it has adjourned." He maintains that because the judge had announced, "[W]e are adjourned," before Mason's statements, the judge was no longer "holding the court" and that Mason's actions therefore could not

have "interrupt[ed] the course of a trial or other judicial proceeding." *Id.*

¶12 We disagree with Mason's formalistic interpretation of what constitutes a judicial proceeding or "holding the court." We acknowledge Mason's assertion that disorderly or insolent behavior toward a judge outside of court cannot justify a finding of contempt under subsection (1) of the contempt statute. *See Robinson v. City Court*, 185 P.2d 256, 257–58 (Utah 1947) (overturning a contempt conviction based on behavior that occurred while the contemnor and the judge were near or in a courthouse elevator because "[t]he judge was not holding court, he had already adjourned the morning session, he was on his way out of the building, and no trial or other judicial proceedings were then in progress"). But we do not agree that the contempt statute should be so rigidly interpreted in a situation involving a litigant who engages in contemptuous behavior while in the courtroom and directly before the judge. *See Commonwealth v. Williams*, 2000 PA Super 165, ¶¶ 5, 21–24, 753 A.2d 856 (rejecting the defendant's assertion that his action of "raising his middle finger and stating, 'F—k You'" to the judge as he "was being led from the courtroom" could not have obstructed the administration of justice, explaining that his actions "belittl[ed] the entire process of the administration of justice" and that "had the Court not acted in response to the [defendant's] actions it would have eroded the Court's authority in the eyes of all those present"); *Rhoad v. State*, 641 S.E.2d 35, 37 (S.C. Ct. App. 2007) (explaining that a finding of direct contempt against a defendant who made an obscene gesture to his trial counsel on his way out of the courtroom was justified because "[r]egardless of whether [the defendant's] hearing had concluded, [the defendant] failed to show proper decorum in the courtroom and exhibited a disrespect for the court").

¶13 Here, although the adjournment of the hearing had been announced, the court proceedings had not actually concluded.

*See Williams*, 2000 PA Super 165, ¶ 22 ("Court proceedings are concluded after the defendant leaves the courtroom, the trial judge goes to the next case or adjourns court *and* leaves the courtroom." (emphasis added) (quotation simplified)). Mason's conduct occurred in the courtroom while the judge was still on the bench,[2] and he made his comments, directed at the judge, immediately after the judge announced the adjournment of the hearing but before adjournment had been accomplished. Simply stating that court was adjourned was not equivalent to being out of court. Nor did the court's interest in maintaining order evaporate simply because it had announced the adjournment of Mason's hearing.[3] "It is essential to the proper administration of . . . justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in

---

2. In these pandemic-affected times, it is important to note that it is not necessarily the physical presence in the courtroom that is most relevant here but that the judge and Mason were still present together in the proceeding's forum. Had the proceeding been held virtually and the contempt taken place during the gap between an announcement of the court's adjournment and the time the judge terminated the virtual connection, we would also consider such contempt to have occurred while the judge was "holding the court," *see* Utah Code Ann. § 78B-6-301(1) (LexisNexis 2018).

3. It is unclear whether the court had completed its business for the day or whether it had another hearing following Mason's hearing. But while the court's interest in maintaining order would certainly have been greater had other parties been in the courtroom or had Mason's actions delayed another hearing, Mason's and his ex-wife's continued presence in the courtroom and the judge remaining on the bench sufficiently demonstrated that Mason's actions tended to interrupt a judicial proceeding while the judge was holding court.

the courtroom of elementary standards of proper conduct should not and cannot be tolerated." *Illinois v. Allen*, 397 U.S. 337, 343 (1970). Because Mason's conduct fell within subsection (1)'s definition of contempt, the court's contempt finding was not error.

B.      Mason Cannot Demonstrate That the Court Abused Its Discretion in Finding That He Had Disobeyed a Court Order

¶14     Mason also maintains that the court abused its discretion by finding him in contempt under Utah Code section 78B-6-301(5). Under that subsection, a person can be held in contempt for "disobedience of any lawful judgment, order or process of the court." Utah Code Ann. § 78B-6-301(5) (LexisNexis 2018). "[T]o prove contempt for failure to comply with a court order it must be shown that the person cited for contempt knew what was required, had the ability to comply, and intentionally failed or refused to do so." *Von Hake v. Thomas*, 759 P.2d 1162, 1172 (Utah 1988). Mason asserts that the judge did not clearly order him to stop talking and therefore could not properly hold him in contempt for talking.

¶15     In his written contempt order, the judge described his earlier verbal orders to Mason by stating that he had "instructed the parties . . . that there should be no talking despite what either side thought of the court's decision" and that after Mason began making "disrespectful comments toward the court," the judge "suggested that Mr. Mason should stop talking" and "instructed Mr. Mason to stop talking." Mason points out that before issuing his ruling, the judge actually ordered the parties not to talk to *each other* rather than ordering them not to talk at all. Thus, he maintains that the order was unclear as to what he was required to do. *See id.*

¶16     But even accepting Mason's argument regarding the judge's initial order not to talk, the record shows that after

Mason began making disrespectful comments, the judge "instructed" Mason not to talk anymore. Nevertheless, Mason "continued with similar accusations and disrespectful comments even after he was taken into custody by bailiffs." It was this behavior that the judge identified as disobedience to "the court's order to stop." We agree with the State that Mason's disregard of the judge's instruction to stop talking after he had begun could constitute contempt, and we cannot say that the court abused its discretion by finding Mason in contempt on that basis. Moreover, because a district court has discretion to deal with contemptuous actions occurring in its presence, the judge did not have to let Mason "wear himself out" before imposing a sanction. In addition, even if there had been error in the court's contempt finding under section 78B-6-301(5), it would have been harmless in light of the additional grounds for contempt it found under section 78B-6-301(1). *See supra* ¶¶ 11–13.

## CONCLUSION

¶17 Although we determine that this appeal is not moot, we conclude that a person accused of direct contempt, committed in the presence of the court, is not entitled to the appointment of counsel in a summary contempt proceeding. Further, the district court did not abuse its discretion in holding Mason in contempt for his insolent behavior under the facts presented here. Accordingly, we affirm the district court's contempt order.

———————