**E-FILED**
**CNMI SUPREME COURT**
E-filed: Dec 22 2025 04:39PM
Clerk Review: Dec 22 2025 04:39PM
Filing ID: 78050137
Case No.: 2024-SCC-0014-FAM
Judy Aldan



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

**NAO O. MACARANAS,**
*Petitioner-Appellee*,

*v.*

**GUY R. MACARANAS,**
*Respondent-Appellant*.

**Supreme Court No. 2024-SCC-0014-FAM**

---

**SLIP OPINION**

**Cite as: 2025 MP 13**

Decided December 22, 2025

_____

CHIEF JUSTICE ALEXANDRO C. CASTRO
ASSOCIATE JUSTICE JOHN A. MANGLOÑA
ASSOCIATE JUSTICE PERRY B. INOS
_____

Superior Court Action No. 23-0238-FCD
Associate Judge Teresa Kim-Tenorio, Presiding
_____

MANGLOÑA, J.:

¶ 1    Respondent-Appellant Guy Macaranas ("Guy") appeals the trial court's order finding him in contempt of court for violating an order of protection and sentencing him to seven days in prison, five of which were suspended. We VACATE the order and REMAND for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2    In June 2023, Nao Macaranas ("Nao") obtained an order of protection (the Order) against her then-husband, Guy. The Order awarded Guy physical custody of their children and granted Nao visitation rights. It also prohibited direct contact between the parties and restricted their telephone communications. In November 2023, the court modified the Order. Under the modified terms, physical custody of the children transferred to Nao and Guy had visitation rights. The modification also required Guy to pay child support each month and continued to limit the parties' telephone communications to matters concerning the children's welfare and visitation.

¶ 3    After a series of text messages exchanged between February 23 and 24, 2024, Nao filed a declaration alleging Guy had violated the Order by sending messages outside the permissible scope and by failing to make the required child support payments. She asserted the messages contained derogatory language, name-calling, and directives that fell outside of the visitation terms. In response, the trial court issued an order to show cause, which set a contempt hearing for March 5 and advised Guy that the proceeding could result in incarceration. The order to show cause further informed Guy that he should consult an attorney and that counsel could be appointed if he could not afford one.

¶ 4    During the March 5 hearing, the court received copies of the relevant text messages and testimony from Guy, who appeared without counsel. The court then continued the contempt hearing for March 13 and appointed counsel to represent Guy.

¶ 5    The parties later stipulated to take the March 13 hearing off-calendar after Guy paid child support and, the court modified the order of protection to allow relatives to transfer the children for visitation. But after Guy again fell behind on child support and was arrested for not returning the children on time, Nao requested to re-calendar the contempt hearing. The court agreed and scheduled the hearing for May 20.

¶ 6    Citing information presented during both the March 5 hearing and the May 20 hearing, including the text messages and testimony about employment availability, the court found Guy in criminal contempt and imposed a seven-day jail sentence, with five suspended. Guy served the two-day jail term immediately. He now appeals the contempt finding on constitutional and factual grounds.

## II. JURISDICTION

¶ 7    We have appellate jurisdiction over final judgments and orders of the

Commonwealth Superior Court, including contempt orders that impose sanctions. NMI CONST. art. IV, § 3; *Matsunaga v. Matsunaga*, 2001 MP 11 ¶ 15 n.8.

### III. STANDARD OF REVIEW

¶ 8    A trial court's decision to find a person in contempt of court is reviewed for abuse of discretion. *In re Estate of Malite*, 2010 MP 20 ¶ 59. Whether a person was deprived of their constitutional right to counsel under the Commonwealth and United States Constitutions is reviewed de novo. *Pac. Fin. Corp. v. Muna*, 2008 MP 21 ¶ 5.

¶ 9    In order to have abused its discretion in using factual findings to hold Guy in contempt, the trial court must have committed a clear error in its findings of fact. Clear error requires the appellate court to consider all the evidence and then be left "with a firm and definite conviction that a mistake has been made." *Pangelinan v. Pangelinan*, 2024 MP 5 ¶ 58 (*quoting Commonwealth v. Crisostomo*, 2014 MP 18 ¶ 8).

### IV. DISCUSSION
#### A. Availability of Judicial Review
##### 1. Claim that the Court Abused its Discretion in Finding Contempt is not Moot

¶ 10    Nao argues that the trial court's finding of contempt is moot because the protective order has expired, part of the contempt sentence has already been served, and the remaining portion of the sentence can no longer be imposed. We disagree. Despite these facts, Guy's appeal remains justiciable. A case is moot only when a court's decision can no longer affect the parties' rights or provide effective relief. *See Oriental Crystal Ltd. v. Lone Star Casino Corp.*, 1997 MP 25 ¶ 11, 11 n.2. A controversy remains live if the court can provide any effective remedy. *See id.*

¶ 11    This appeal presents a live controversy because the finding of contempt may produce continuing adverse effects on Guy's rights that appeal could remedy. The contempt finding carries continuing collateral consequences. After mentioning Guy's request for custody of his children in the couple's divorce proceedings, the court took judicial notice of the order of protection. A finding of contempt of an order of protection could be taken into account whenever the court modifies custody of Guy and Nao's children in the future. As other courts have recognized, even a finding of contempt with a fully-served jail sentence can influence future custody and visitation determinations. *State v. Mason*, 486 P.3d 94, 97 (Utah Ct. App. 2021); *see also Putman v. Kennedy*, 900 A.2d 1256, 1263 (Conn. 2006) (holding appeal of expired restraining orders was not moot because of collateral consequences to defendant, including in future custody determinations); *Poland v. Poland*, 518 S.W.3d 98, 103 (Ark. Ct. App. 2017) (noting that findings of domestic abuse are not moot because of continuing collateral consequences, including possible effects on future custody determinations).

¶ 12    In *State v. Mason*, the defendant was held in contempt for directing insulting remarks at the court during a post-divorce proceeding and was sentenced to forty-eight hours in prison. *Mason*, 486 P.3d at 96. Mason had already served the brief jail term, and the contempt did not result in a criminal conviction. *Id.* Nevertheless, the court of appeals held the appeal was not moot. *Id.* It observed a realistic possibility that the contempt finding could influence future custody proceedings or ongoing family-law litigation. *Id.* at 97. Likewise, Guy risks similar collateral consequences as a result of this contempt finding. Vacating the contempt order would remove an adverse record that could affect future custody and visitation rights. Therefore, this appeal presents a live controversy and is not moot.

### 2. Objection Not Required to Preserve Claim for the Constitutional Right to Counsel

¶ 13    Nao additionally argues that Guy forfeited his right to counsel when he did not object or move to strike the previous testimony once counsel had been appointed. Generally, an appellant does not preserve a procedural issue for appeal if the appellant fails to object, thereby implicitly accepting the procedure. *KC Multimedia v. Bank of America*, 90 Cal. Rptr. 3d 247, 253 (Cal. Ct. App. 2009). But appellate courts may consider unpreserved issues when "(1) it is one of law not relying on any factual record; (2) a new theory or issue has arisen because of a change in law while the appeal is pending; or (3) plain error occurred and an injustice might otherwise result unless we consider the issue." *Estate of Ogumoro v. Ko*, 2011 MP 11 ¶ 58 (quoting *Salas v. Mafnas*, 2010 MP 9 ¶ 47); *see also Commonwealth v. Santos*, 4 NMI 348, 350 (1996).

¶ 14    The first and third exceptions apply. Neither party disputes that Guy appeared without counsel at the March 5 hearing, testified, and that the court relied on this uncounseled testimony in entering a contempt finding. The only remaining matter is a question of law: whether Guy was constitutionally entitled to counsel at that hearing. An error based on the undisputed actions of the parties within the litigation process does not rely on any factual record and is a question of law. *See Commonwealth Dev. Auth. v. Tenorio*, 2004 MP 22 ¶ 21 (determining whether a witness's declaration to the court had complied with statutory requirements was a question of law, not relying on a factual record). In this case, because the issue is legal and the record is undisputed, preservation is not required.

¶ 15    The third exception to the preservation requirement, meanwhile, applies when a court finds plain error by determining whether there was an error, whether the error was plain, and whether the error affected the individual's substantial rights. *Commonwealth v. Shabgua Zhang*, 2023 MP 9 ¶ 24. As discussed below, the court found Guy in contempt based on evidence produced at a hearing where Guy was unrepresented by counsel, a plain error that affected his substantial rights. Because the undisputed record shows plain error that resulted in harm to his case, we will review notwithstanding the absence of an objection.

### B. Guy was Deprived of His Constitutional Right to Counsel at the First Contempt Hearing

¶ 16    Guy argues that the court violated his constitutional right to counsel by proceeding with the March 5 hearing without ensuring he had representation. The right to counsel for criminal proceedings has been a long-established requirement of due process under both CNMI and federal constitutional law. *Alabama v. Shelton*, 535 U.S. 654, 661 (2002); *Pac. Fin. Corp.*, 2008 MP 21 ¶ 17. We have also previously held that the risk of incarceration weighs heavily in favor of the right to counsel even in civil proceedings. *Pac. Fin. Corp.*, 2008 MP 21 ¶ 17 (holding that failure to provide counsel where there was a risk of incarceration was not harmless error but guts the core protection due process provides); *see Bank of Guam v. Ruben*, 2008 MP 22 ¶ 13, *overruled on other grounds by Marianas Eye Inst. v. Moses*, 2011 MP 1 ¶ 19 ("The contempt proceedings for an indigent can proceed only after the assignment of counsel, or a waiver of counsel, by the contemptor"). Because the court held Guy in criminal contempt, resulting in his incarceration, his right to counsel was beyond reproach.

¶ 17    The remaining question is when the right to counsel attached. Guidance can be drawn from the United States Supreme Court's jurisprudence on the attachment of the right to counsel in criminal prosecutions. The Supreme Court has held that the right to counsel attaches at any "critical stage" of a proceeding, one where the absence of counsel risks substantial harm or undermines fairness. *United States v. Wade*, 388 U.S. 218, 227 (1967). Conversely, preliminary or non-adversarial stages that do not threaten substantial prejudice do not trigger the right. *Gerstein v. Pugh*, 420 U.S. 103, 122 (1975).

¶ 18    Using considerations like whether a given stage is adversarial, preliminary, or critical is supported by legal rationales in other jurisdictions as well. The Maryland Court of Appeals noted that had defendants been represented during their circuit court civil contempt hearings, "it is doubtful they would have been sentenced to imprisonment" because a lawyer would have recognized on-point cases that existed and brought them to the circuit court's attention. *Rutherford v. Rutherford*, 464 A.2d 228, 237 (Md. 1983). Likewise, the New Jersey Supreme Court has explained that the right to counsel is triggered by "the defendant's interest in personal freedom." *Pasqua v. Council*, 892 A.2d 663, 671 (N.J. 2006). In Texas family court, the legislature codified the right to counsel whenever a party moves for enforcement of an order or to revoke community service, well before any hearing, lest anyone suffer incarceration without having been represented by counsel. TEX. FAM. CODE § 157.163; *In re Rivas-Luna*, 528 S.W. 3d 167, 170 (Tex. App. 2017). Courts and lawmakers alike discuss the right to counsel in terms of the overall concern that motivates the existence of the right: wrongful incarceration. Ensuring counsel when the proceedings become adversarial or critical prevents wrongful incarceration and thus should be the stage when the right to counsel attaches.

¶ 19     Guy's right to counsel attached at the March 5 hearing as that hearing was both adversarial and prejudicial. Opposing counsel cross-examined Guy and sought admission of evidence against him, including the text messages and testimony about his work schedule. The court then used this information and formed the basis for the later contempt finding. Because Guy suffered incarceration that he might have avoided with representation, he suffered substantial prejudice. Every relevant consideration supports finding that the right to counsel attached at the March 5 hearing. Proceeding without ensuring representation or obtaining a valid waiver[1] violated due process and resulted in substantial prejudice. Because Guy had a right to counsel at the March 5 hearing and because the presence of counsel would affect the evidence entered against Guy, the violation alone would warrant vacatur. However, for completeness and clarity, we will also address Guy's arguments regarding whether the court abused its discretion based on the record before it.

### C. The Trial Court Did Not Abuse Discretion in Finding Contempt

¶ 20     A court may find a person in criminal contempt when they unlawfully, knowingly, and willfully resist or refuse to comply with a lawful court order or by disturbing the peace in or near the courtroom. 6 CMC § 3307. Guy contests four underlying factual findings in the contempt order: (1) that he was given many chances to avoid contempt, (2) that he engaged in "mental games" with Nao throughout the hearing, (3) that his text messages exceeded the permissible scope of contact, and (4) that he willfully failed to pay child support. Aside from the fourth finding, which we conclude is harmless error, the record supports the court's determinations.

### 1. Chances to Avoid Contempt

¶ 21     When the court decided to sanction Guy, it stated that "the court has given Mr. Macaranas many chances and this is the second time that the court has had to appoint counsel to represent him because the court has threatened sanctions." The record supports this characterization. The court issued an order to show cause in February, held hearings in March, warned Guy repeatedly, and at one point removed the matter from the calendar after Guy made a child support payment. Counsel even acknowledged that the possibility of contempt remained

---

[1]     The right to counsel may be waived, but waiver must be knowing, voluntary, and intelligently made on the record. *Bank of Guam v. Ruben*, 2008 MP 22 ¶ 13, *overruled on other grounds by Marianas Eye Inst. v. Moses*, 2011 MP 1 ¶ 19; *see also Carothers v. Carothers*, 337 S.W.3d 21, 26 (Mo. 2011) (holding that a contemnor's appearance without counsel and statements regarding inability to afford an attorney were insufficient to establish waiver absent an on-the-record inquiry); *Tinsley v. Commonwealth*, 185 S.W.3d 668, 674 (Ky. Ct. App. 2006) (failure to object or request counsel does not constitute waiver). Silence or mere participation in the proceeding without counsel does not amount to a valid waiver. The record here contains no advisement of the right to counsel and no inquiry sufficient to establish that Guy knowingly and intelligently relinquished that right.

"hanging over his head." Guy had several opportunities to comply and avoid being held in contempt. While no case law describes a requirement for the court to give a defendant "many chances" before finding contempt, this finding shows that Guy acted knowingly when he violated the order. The finding was not clearly erroneous.

### 2. Mental Games

¶ 22    Likewise, the court did not commit clear error in finding Guy played "mental games" with Nao. The record contains ample support. Nao entered into evidence text messages Guy had sent calling her names and instructing her to do more than the visitation agreement provided. One exchange features Guy thanking Nao for a previous action, followed immediately by a new request. When Nao turned him down, he responded "really useless thanking you," which one can reasonably read as evidence of an attempt to control. Another text message reads "But you should put into your head when you with kids it's your responsibility," to shift responsibility onto Nao for additional tasks Guy demanded of Nao. Guy then employed similar language in the March 5 hearing, stating in court "I'm not demanding, I'm just asking, you know, we—why can't we have this mutual agreement that, you know, she's going to bring my kids?" Read together, the court had evidence to conclude that Guy's behavior was manipulative and belittling.

### 3. Communications Exceeding Scope of Protective Order

¶ 23    The Order only "allowed contact by telephone concern[ing] child(ren)'s welfare, and visitation." On February 23 and 24, Guy initially texted about the terms of visitation, but deviated to call Nao "lazy" and "brain dead," and tell her "Get a life!" and that "You do anything to complain with no morals or conscious consequences." He also demanded she do things inconsistent with the visitation schedule, such as dropping off the children before the designated time and picking them up before the designated pick-up time. The court did not err in concluding these text messages violated the order of protection.

### 4. Willfully Refusing to Pay Child Support

¶ 24    Finding that Guy willfully failed to pay child support was erroneous, but ultimately harmless error. The court had found Guy guilty of contempt based on non-payment of child support, visitation schedule violations, and violations of the limited contact provision. Even without the non-payment of child support, the court had sufficient factual backing on the other grounds to justify the contempt finding. However, the court did not have the evidence to find that Guy willfully failed to pay child support. Guy testified that he lacked steady employment and had fallen behind on other financial obligations, including car payments and gifts to his adult children. Unlike cases where courts have found deliberate nonpayment despite available resources, the record here shows no evidence that Guy used his income for discretionary expenses during the relevant

period.

¶ 25     In similar cases where contempt findings were upheld, courts found that the contemnor chose to prioritize discretionary expenses over support obligations. In *Smith v. Weedman*, the Indiana Court of Appeals found that it was appropriate to consider that the defendant Jeffrey Smith had the ability to pay for child support but willfully chose to pay other financial obligations instead to support the finding of contempt. *Smith v. Weedman*, 892 N.E.2d 166, 172 (Ind. Ct. App. 2008). Specifically, Smith had paid his cable television bill, his cell phone bill, his music downloading costs, and expenses for his wedding and honeymoon rather than pay his full child support. *Id.* at 169. Likewise, in *Trisler*, the appellate court affirmed the defendant's contempt conviction for failure to pay child support, noting defendant was unable to pay child support because he was paying other bills. *See State ex rel. Trisler v. Collins*, 2012 Tenn. App. LEXIS 258, at *2 (Tenn. Ct. App. Apr. 19, 2012). The court found that "having the means to meet other obligations evidences the ability to pay child support." *Id.* at *4 (*quoting Buttrey v. Buttrey*, 2008 WL 45545, at *2 (Tenn. Ct. App. Jan. 2, 2008).

¶ 26     No comparable evidence exists here. Rather, at the same time Guy failed to pay child support, he ceased payments on his car and stopped giving gifts to his adult children. Guy's single payment made under threat of contempt, standing alone, does not prove a willful refusal to pay.

¶ 27     Although the record cannot support a finding of willful nonpayment, the contempt order rested on additional independent bases. Because those grounds alone are sufficient to sustain the contempt finding, the error regarding nonpayment of child support is harmless error and did not affect the outcome. *See* COM. R. CR. P. 52(a) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded").

## V. CONCLUSION

¶ 28     While the court had supported its decision with sufficient evidence, it found Guy guilty of contempt after he had been unrepresented during critical stages of the proceeding against him. For a person faced with the prospect of incarceration for criminal contempt, the constitutional right to counsel has attached by the time the court receives evidence against the defendant. Guy had neither counsel nor waived his right to counsel at the March 5 hearing, when Nao entered key evidence against him. For the foregoing reasons, we VACATE the court's finding of contempt and REMAND for further proceedings consistent with this opinion.

So Ordered this 22nd day of December, 2025.


⎯⎯⎯⎯⎯⎯/s/⎯⎯⎯⎯⎯⎯⎯⎯
ALEXANDRO C. CASTRO
Chief Justice


⎯⎯⎯⎯⎯⎯/s/⎯⎯⎯⎯⎯⎯⎯⎯
JOHN A. MANGLOÑA
Associate Justice


⎯⎯⎯⎯⎯⎯/s/⎯⎯⎯⎯⎯⎯⎯⎯
PERRY B. INOS
Associate Justice

COUNSEL

Joseph E. Horey, Saipan, MP, for Respondent-Appellant.

Jane Mack, Saipan, MP, for Petitioner-Appellee.

*NOTICE*

*This slip opinion has not been certified by the Clerk of the Supreme Court for publication in the permanent law reports. Until certified, it is subject to revision or withdrawal. In any event of discrepancies between this slip opinion and the opinion certified for publication, the certified opinion controls. Readers are requested to bring errors to the attention of the Clerk of the Supreme Court, P.O. Box 502165 Saipan, MP 96950, phone (670) 236–9715, e–mail Supreme.Court@NMIJudiciary.gov.*

E-FILED
CNMI SUPREME COURT
E-filed: Dec 22 2025 04:39PM
Clerk Review: Dec 22 2025 04:39PM
Filing ID: 78050137
Case No.: 2024-SCC-0014-FAM
Judy Aldan



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

**NAO O. MACARANAS,**
*Petitioner-Appellee*,

*v.*

**GUY R. MACARANAS,**
*Respondent-Appellant*.

**Supreme Court No. 2024-SCC-0014-FAM**

---

**SLIP OPINION**

**Cite as: 2025 MP 13**

Decided December 22, 2025

———————

CHIEF JUSTICE ALEXANDRO C. CASTRO
ASSOCIATE JUSTICE JOHN A. MANGLOÑA
ASSOCIATE JUSTICE PERRY B. INOS

———————

Superior Court Action No. 23-0238-FCD
Associate Judge Teresa Kim-Tenorio, Presiding